1

2

3

4

5

6

7

8

9

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JONNY NGO,<br><br>Defendant. | Case No.:  19cr1391 JM<br><br>**ORDER ON MOTION FOR COMPASSIONATE RELEASE** |

17

18

19

20

21

22

Presently before the court is Defendant Jonny Ngo's Motion to Reduce Sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No.  52).  The Government filed a Response in Opposition (Doc. No. 58) and Defendant submitted a Reply (Doc. No. 62). Having carefully considered these submissions and the authorities presented, the court **DENIES** Defendant's Motion.

23

**BACKGROUND**

24

25

26

27

On September 12, 2019, Mr. Ngo pled guilty to mail fraud in violation of 18 U.S.C. § 1341 and was sentenced to 75 months in prison.  (*See* Doc. Nos. 26; 28 at 1; 50 at 2).  Mr. Ngo is currently incarcerated at USP Lompoc Satellite Camp.  (Doc. No. 58 at 2).  He is scheduled to be released on August 22, 2024.  *Id.*

28

1

19cr1391 JM

1    In the instant Motion, Mr. Ngo seeks modification of his sentence under the

2 compassionate release provision of 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First

3 Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).  (Doc. No. 62 at 1).

4                                          **ANALYSIS**

5    Generally, a court may not correct or modify a prison sentence once it has been

6 imposed, unless expressly permitted by statute or by Rule 35 of the Federal Rules of

7 Criminal Procedure.  *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003).  The

8 First Step Act is one such statute.

9    18 U.S.C. § 3582(c)(1)(A) provides, in relevant part:

> The court may not modify a term of imprisonment once it has
> been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of
> Prisons, or upon motion of the defendant after the defendant has
> fully exhausted all administrative rights to appeal a failure of
> the Bureau of Prisons to bring a motion on the defendant's
> behalf or the lapse of 30 days from the receipt of such a request
> by the warden of the defendant's facility, whichever is earlier,
> may reduce the term of imprisonment (and may impose a term
> of probation or supervised release with or without conditions
> that does not exceed the unserved portion of the original term of
> imprisonment), after considering the factors set forth in section
> 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a
> reduction;
>
> ...
>
> and that such a reduction is consistent with applicable policy
> statements issued by the Sentencing Commission.

*///*

*///*

2

19cr1391 JM

1    **I.      Exhaustion Requirement**

2          The First Step Act allows prisoners to bring their own motions for compassionate

3    release after: (1) fully exhausting administrative appeals of the Federal Bureau of Prisons

4    ("BOP")'s decision not to file a motion, or (2) "the lapse of 30 days from the receipt . . .

5    of such a request" by the warden of the defendant's facility, "whichever is earlier."

6    18 U.S.C. § 3852(c)(1)(A).

7          From the record, it is not clear whether Mr. Ngo exhausted his administrative

8    remedies.   On July 25, 2021, Mr. Ngo submitted a compassionate release request to the

9    Warden of USP Lompoc.  (Doc. Nos. 52 at 1; 58 at 2).  According to the Government, in

10   August and September 2021, Mr. Ngo's request was denied.  *Id.*

11         Mr. Ngo and the Government both contend that Defendant met the statutory

12   exhaustion requirement because thirty days have lapsed since he filed his request to the

13   Warden. (Doc. No. 52 at 1).  Notwithstanding the Government's concession, most courts

14   have interpreted the exhaustion requirement to mean "that a petition for compassionate

15   release may be submitted to the sentencing judge if 30 days have elapsed after a warden's

16   receipt of a defendant's request, *and* the warden failed to respond; *but* if the warden

17   denied the request within 30 days of receipt, the defendant must exhaust administrative

18   remedies within the Bureau of Prisons."  *United States v. Arthaloney*, No. 8:18CR127,

19   2020 WL 2571171, at *1 (D. Neb. May 21, 2020) (collecting cases); 28 C.F.R.

20   § 542.15 (directing inmates to appeal the Warden's denial of an administrative request to

21   "the appropriate Regional Director within 20 calendar days of the date the Warden signed

22   the response," and then to the General Counsel of the BOP.  "Appeal to the General

23   Counsel is the final administrative appeal.").  The statute "does not allow a defendant to

24   short-circuit the BOP's administrative procedures simply by waiting  30 days after filing

25   the request if the warden timely acted on the request."  *United States v. Van Sickle*,

26   No. CR18-0250JLR, 2020 WL 3962225, at *2 (W.D. Wash. July 13, 2020).

27         In the court's view, § 3582's exhaustion requirements is mandatory for inmates

28   held in BOP custody.  *See, e.g.*, *Gallo Cattle Co. v. U.S. Dep't of Agric.*, 159 F.3d 1194,

19cr1391 JM

1  1197 (9th Cir. 1998) (citation omitted) ("[S]tatutorily-provided exhaustion requirements

2  deprive the court of jurisdiction and, thus, preclude any exercise of discretion by the

3  court."); *see also United States v. Wang*, No. 19-CR-01895-BAS-1, 2020 WL 6582685,

4  at *2 (S.D. Cal. Nov. 10, 2020) (joining the vast majority of courts in this circuit that

5  have found exhaustion of § 3582 mandatory); *United States v. Casanova*,

6  No. 14-CR-0312 L, 2020 WL 5203407, at *1 (S.D. Cal. Sept. 1, 2020) ("The Court has

7  no authority to consider Defendant's motion until the exhaustion criteria of §

8  3852(c)(1)(A) is met."); *United States v. Otero*, Case No. 17cr879-JAH,

9  2020 WL 1912216, at * 4 (S.D. Cal. Apr. 20, 2020) ("[F]ailure to exhaust administrative

10 remedies is fatal to a compassionate release petition, even in light of the urgency created

11 by COVID-19."); *United States v. Reid*, Case No. 17-cr-00175-CRB-1,

12 2020 WL 1904598, at * 3 (N.D. Cal. Apr. 18, 2020) ("The Supreme Court has stated that

13 '[w]here Congress specifically mandates, exhaustion is required.'") (citations omitted);

14 *United States v. Eberhart*, 448 F. Supp. 3d 1086 (N.D. Cal. 2020) ("Because defendant

15 has not satisfied the exhaustion requirement, the court lacks authority to grant relief[.]").

16      Mr. Ngo bears the burden of showing he exhausted his administrative rights before

17 filing his compassionate release motion.   *See United States v. Williams*,

18 No. 1:12-CR-0135 AWI BAM, 2021 WL 289391, at *3 (E.D. Cal. Jan. 28, 2021); *Van*

19 *Sickle*, 2020 WL 3962225, at *2.   Without information regarding when the Warden

20 denied Mr. Ngo's request and whether Mr. Ngo appealed that decision, the court cannot

21 determine whether exhaustion has occurred and whether jurisdiction exists.   The court

22 could, and does, deny Mr. Ngo's request on this ground alone.

23 **II.   Extraordinary and Compelling Reasons**

24      Even if the court were to reach the merits, Mr. Ngo has not met his burden of

25 demonstrating "extraordinary and compelling reasons" to justify a sentence reduction.   A

26 district court may modify a sentence and grant compassionate release if, after

27 consideration of the factors set forth in section 3553(a), the court finds, as relevant here,

28 that "extraordinary and compelling reasons warrant such a reduction" and "that such a

1   reduction is consistent with applicable policy statements issued by the Sentencing

2   Commission."  18 U.S.C. § 3852(c)(1)(A)(i).

3        In determining what constitutes "extraordinary and compelling reasons," the Ninth

4   Circuit has recently clarified that the "current version" of the United States Sentencing

5   Commission's policy statement section 1B1.13 "is not an 'applicable policy statement[]'

6   for 18 U.S.C. § 3583(c)(1)(A) motions filed by a defendant."  *United States v. Aruda*,

7   993 F.3d 797, 802 (9th Cir. 2021).   Nevertheless, "[t]he Sentencing Commission's

8   statements   in   U.S.S.G.   §   1B1.13 may   inform   a   district   court's   discretion   for

9   § 3582(c)(1)(A) motions filed by a defendant, but they are not binding."  *Id.*

10        The   commentary   to   §1B1.13   enumerates   certain   circumstances   constituting

11   "extraordinary and compelling reasons" including medical condition, advanced age,

12   family circumstances, and "[o]ther reasons—[a]s determined by the Director of the

13   Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling

14   reason other than, or in combination with, the reasons described in subdivisions (A)

15   through (C)."  U.S.S.G. §1B1.13 n.1.

16        **1.   Defendant's Medical Conditions**

17        In this case, Mr. Ngo contends he suffers from chronic asthma which makes him

18   particularly vulnerable to COVID-19.  (Doc. No. 52 at 1).  Mr. Ngo's request for a

19   sentence reduction on this basis fails for lack of evidence.  As the movant, Mr. Ngo bears

20   the burden of establishing he is eligible for a sentence reduction.  *See United States v.*

21   *Jones*, 836 F.3d 896, 899 (8th Cir. 2016) ("It is the defendant's burden to establish that he

22   warrants a § 3582(c)(2) reduction.").  Despite this, Mr. Ngo's Pre-Sentence Report does

23   not mention any medical conditions (Doc. No. 33 at ¶ 57) and he has not provided any

24   medical records to support his claim or to indicate how his condition is being managed

25   while in prison.

26        The   Government   concedes   the   Centers   for   Disease   Control   and   Prevention

27   ("CDC") has identified moderate to severe asthma as a condition that may increase the

28   risk of severe illness from contracting COVID-19.  (Doc. No. 58 at 11-12); *see People*

5

*with Certain Medical Conditions*, Centers for Disease Control and Prevention, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed January 24, 2022).  Although asthma is, therefore, a risk factor, Mr. Ngo has submitted no evidence his condition is moderate or severe, or that it is not being adequately treated.

The Government contends Mr. Ngo's records show he reported having childhood asthma, but had not been using an inhaler for years.  (Doc. No. 58 at 11).  Mr. Ngo was then allegedly diagnosed with acute respiratory distress in August and September of 2021 and prescribed an inhaler.  *Id.*  According to the Government, Mr. Ngo's asthma is being professionally managed by the BOP with prescription medication, including albuterol inhalers.  *Id.*

In addition, Mr. Ngo is fully vaccinated (Doc. No. 62 at 8) and courts are "consistently refusing to grant release from custody to inmates or detainees who have been vaccinated."  *Gavilanes-Curiel v. Archambeault*, No. 21CV1471-CAB-WVG, 2021 WL 4895222, at *1 (S.D. Cal. Sept. 21, 2021); *see also United States v. Daniels*, No. 12-CR-00574-PJH-3, 2021 WL 4975037, at *4 (N.D. Cal. Oct. 26, 2021) ("While the COVID-19 vaccines may not provide absolute protection against all infections, the evidence so far shows that they do provide significant protection against severe illness and death resulting from the coronavirus."); *United States v. Smith*, No. 2:98-cr-00009-KJM-CKD, 2021 WL 1890770, at *3 (E.D. Cal. May 11, 2021) ("Although no federal court of appeal appears to have considered the question, district courts across the country, including within this Circuit, have held almost uniformly that a defendant's vaccination undercuts any claims of 'extraordinary and compelling reasons' based on a high risk of infection."); *United States v. Grummer*, 519 F. Supp. 3d 760, 763 (S.D. Cal. 2021) ("Although Defendant suffers from several chronic medical conditions, his vaccination significantly mitigates the risk that he will contract COVID-19.  Other courts to address

6

1    the issue have reached similar conclusions.").[1]

2         In support of his Motion, Mr. Ngo points to ongoing conditions at USP Lompoc,

3    alleging there are "no social distancing" measures being put into place and there exists a

4    "great division among the inmates" regarding whether to get vaccinated.  (Doc. No. 62 at

5    4).  Mr. Ngo cites to the class action lawsuit being litigated in the Central District of

6    California, brought on behalf of inmates challenging their conditions of confinement at

7    USP Lompoc.  *See Torres v. Milusnic*, No. 20cv4450-CBM-PVC.  Although the court

8    acknowledges Mr. Ngo's concerns, the same argument applies to any inmate at FCI and

9    USP Lompoc.  "Consideration of relief on a motion for compassionate release looks not

10   at the generalized impacts on the movant and others but to the specific effects on him

11   that, in combination, make his circumstances extraordinary and compelling."  *United*

12   *States v. Wahhab*, No. 19-cr-00060-WHO-1, 2020 U.S. Dist. LEXIS 109977, at *3

13   (N.D. Cal. June 23, 2020).

14        Here, Mr. Ngo has failed make a showing his asthma, combined with the level of

15   treatment he is currently receiving in light of his fully vaccinated status, qualifies as

16   "extraordinary and compelling" reasons for release within the context of 18 U.S.C. §

17   3582 (c)(1)(A).

18   **III.    Section 3553(a) Factors**

19        Finally, any relief to be granted pursuant to 18 U.S.C. § 3582(c)(1)(A) must be

20   consistent with the sentencing factors set forth in § 3553(a).  *United States v. Trent*,

21   No.  16-CR-00178-CRB-1,  2020  WL  1812242,  at  *1  (N.D.  Cal.  Apr.  9,  2020);

22

23   _____

24   [1] The CDC's recent pronouncements regarding the vaccine's effectiveness in protecting
     against severe illness and death apply equally to the Omicron variant, even though the
25   Omicron variant appears to be more transmissible than earlier COVID-19 strains.  *See*
     CDC,      *Omicron      Variant:      What      You      Need      to      Know*,
26   https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html (last visited
27   Jan. 5, 2022) ("Current vaccines are expected to protect against severe illness,
     hospitalizations, and deaths due to infection with the Omicron variant.").
28

7

19cr1391 JM

1  *see also United States v. Parker*, 461 F. Supp. 3d 966, 981 (C.D. Cal. 2020).  These

2  factors include: "the nature and circumstances of the offense and the history and

3  characteristics of the defendant; the need for the sentence imposed; the kinds of sentences

4  available; the kinds of sentence and the sentencing range established in the Guidelines;

5  any pertinent policy statement issued by the Sentencing Commission; the need to avoid

6  unwarranted sentence disparities among defendants with similar records who have been

7  found guilty of similar conduct; and the need to provide restitution to any victims."

8  *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (citing 8 U.S.C. § 3553(a)(1)-

9  (7)).

10      Here, even if Mr. Ngo's motion was supported by a showing of extraordinary and

11  compelling reasons for his release, the court is not persuaded the requested reduction to

12  his sentence would be consistent with the above sentencing factors.  It is unquestionable

13  that Mr. Ngo's offense, while non-violent, was extremely serious.  Mr. Ngo was a

14  principal architect of a massive financial fraud scheme that solicited more than $60

15  million in funds from at least 350 individuals, ultimately resulting in more than $20

16  million in losses. (Doc. No. 33 at 5).  In this court's view, a reduction in Defendant's

17  sentence now would not  properly  "reflect the seriousness of the offense," "promote

18  respect for the law," or "provide just punishment for the offense[.]"  18 U.S.C.

19  § 3553(a)(2).  Nor would it "afford adequate deterrence to criminal conduct" or

20  adequately "protect the public from further crimes of the defendant."  18 U.S.C.

21  §§ 3553(a)(2)(B)-(C).

22  **IV.   Eighth Amendment Claim**

23      Finally, Mr. Ngo alleges a violation of his Eighth Amendment right against cruel

24  and unusual punishment.  (Doc. No. 62 at 7-8).  Specifically, Mr. Ngo alleges he was

25  repeatedly quarantined and placed in solitary confinement during which time he "endured

26  no showers and or communication with his family" and was provided with insufficient

27  food.  *Id.* at 8.  However, "an Eighth Amendment claim 'relating to the manner and

28  conditions of confinement—[is] not properly brought in a motion for compassionate

19cr1391 JM

1   release under § 3582(c)(1)(A) and this Court does not have jurisdiction to consider [it].'"

2   *United States v. Perez*, No. 18CR4145-H, 2020 WL 4732056, at *5

3   (S.D. Cal. Aug. 14, 2020) (quoting *United States v. Numann*, No. 3:16-CR-00025-TMB,

4   2020 WL 1977117, at *4 (D. Alaska Apr. 24, 2020) (Burgess, J.)).   Accordingly, the

5   court declines to reduce Mr. Ngo's sentence or order his release on Eighth Amendment

6   grounds based on the procedural posture of his request for relief.

7                                    **CONCLUSION**

8          For the foregoing reasons, the court **DENIES** Defendant's Motion for

9   Compassionate Release.

10         **IT IS SO ORDERED.**

11   DATED: January 24, 2022         _____

12                                   JEFFREY T. MILLER
                                     United States District Judge

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9